

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES HOLTS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 02-1038** |
| **WARDEN JAMES MILLER** | * | **SECTION: "T"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is HEREBY RECOMMENDED that petitioner's application for federal habeas corpus relief be DISMISSED WITH PREJUDICE.

## I. PROCEDURAL HISTORY

On March 27, 1998, petitioner, James Holts, along with his wife, Charlotte Holts, were charged with simple robbery in the same bill of information.[1]  Thereafter, the State severed the charges against the two defendants and, on May 26, 1998, commenced trial proceedings only with

---

[1] A copy of the bill of information is contained in the State rec., vol. 1 of 2.



respect to petitioner.[2] The trial ended the following day, on May 27, 1998, with the jury rendering a verdict of guilty.[3]

As a result of his conviction for simple robbery, on October 9, 1998, petitioner was sentenced to seven years incarceration at hard labor with credit for time served.[4] Seeking relief, petitioner filed a direct appeal. On November 3, 2000, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction and sentence. *State v. Holts*, 99-KA-1677 (La. App. 1st Cir. 2001) (unpublished opinion.)[5] Similarly, on October 26, 2001, the Louisiana Supreme Court denied petitioner's writ application. *State ex rel. Holts v. State*, 800 So.2d 376 (La. 2001).

---

[2] It is unclear why Charlotte Holts was not tried at the same time as petitioner. However, the fact that she remained a defendant in the case is reflected in the following trial excerpts:

BY THE COURT:
    Wait a minute. Listen to me. Whether or not she [i.e., Charlotte Holts] testified could affect her guilt or innocence **as a defendant in this case**. And that's why I appointed Mr. Spell for the limited purpose of advising her of what her options were and what the possible consequences were, whether she testified or she didn't testify.

(State rec., vol. 1 of 2, trial transcript at p. 73 (emphasis added)).

BY MR. HOFFSTADT [the prosecutor]:
    Well, Your Honor, also the Fifth Amendment privilege she has, **she is a defendant and will be tried soon after this**.

(State rec., vol. 1 of 2, trial transcript at p. 74 (emphasis added)).

[3] *See* State rec., vol. 1 of 2, trial transcript at pp. 111-114.

[4] *See* State rec., vol. 1 of 2, sentencing transcript at p. 2.

[5] A copy of the First Circuit's unpublished opinion is contained in the State rec., vol. 2 of 2.

On March 26, 2002, petitioner, currently incarcerated in Washington Correctional Center, filed the instant federal habeas corpus application.[6] Petitioner raises one claim for relief, namely, that the state trial court violated his constitutional rights under the Compulsory Process Clause of the Sixth Amendment by failing to compel the trial testimony of his wife and co-defendant, Charlotte Holts. In its response, the State does not contest the timeliness of the instant petition nor does the State contest the fact that petitioner has exhausted his state court remedies. *See Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Accordingly, the Court shall proceed to address the merits of petitioner's claim.

## II. FACTS[7]

On the night of March 11, 1998, in Washington Parish, the victim, after having a couple of drinks and watching a basketball game at Joe's Bar, left and returned home. The victim parked his car beside his home, locked the car door, and headed toward his home. As he reached for the screen door on the front of his home, the victim was approached by petitioner and his wife, Charlotte Holts. Petitioner told the victim that he owed Mrs. Holts $100.00. The victim responded that he did not

---

[6] *See* Federal rec., doc. # 1. This March 26, 2002 filing date was ascertained via the Court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application).

[7] The facts are taken from the Louisiana First Circuit Court of Appeal's decision, *State v. Holts*, 99-KA-1677 (La. App. 1 Cir. 2000) (unpublished opinion), following this court's review of the State record to ensure the accuracy of the appellate court's factual recitation.

owe her anything. Mrs. Holts told petitioner to "get him." Petitioner and Mrs. Holts then beat the victim, knocked him down his steps, sat on him, took money from his pocket, his money clip, and his house and car keys. The victim, who was sixty-eight years old at the time, thought that he was going to be killed and indicated that he could not fight back because he was beaten so severely.

Shortly after the incident, the police arrived at the victim's home, and he was taken to the hospital. The victim told the police who robbed him. The victim knew the petitioner because he was married to Charlotte Holts and he had known Mrs. Holts "all [his] life." At trial, the victim testified that he did not owe Mrs. Holts any money.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.[8]

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or

---

[8] Section 2254(d) provides in full:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV. ANALYSIS

Petitioner desired to have his wife and co-defendant, Charlotte Holts, testify on his behalf at trial. However, when it came time to elicit her testimony, her counsel informed the trial court that Charlotte Holts would not testify, stating:

> BY MR. SPELL [Charlotte Holts' attorney]:
> The last time I talked to her [i.e., Charlotte Holts], Your Honor, she was going to invoke the Fifth Amendment and the spousal witness privilege....[9]

---

[9] While Charlotte Holts ultimately relied upon the spousal privilege enunciated under LSA-C.E. art. 505, her counsel made clear that she was entitled to invoke either this privilege or her Fifth Amendment privilege against self-incrimination. Further, he informed that Charlotte Holts intended to invoke any available privilege, regardless of whether the privilege arose from state law or from the Constitution, in order to avoid testifying. Specifically, counsel stated:

(State rec., vol. 1 of 2, trial transcript at p. 70). In response, the trial court refused to compel Charlotte Holts' testimony.[10] Petitioner claims that the trial court's refusal in this regard constituted a violation of his right to compulsory process under the Sixth Amendment.

A similar claim was raised in *Brown v. Cain*, 1995 WL 495890 (E.D. La. 1995), *aff'd*, 104 F.3d 744 (5th Cir.), *cert. denied*, 520 U.S. 1195, 117 S.Ct. 1489, 137 L.Ed.2d 699 (1997). In that case, petitioner, John Brown, and his female companion, Anna Hardeman, were charged with first degree murder in the same bill of information. *Id.* at n.2. Thereafter, the State severed the charges against the two defendants and commenced trial proceedings first against Brown.[11]

In the sentencing phase of his trial, Brown, having already been adjudicated guilty of first degree murder, sought to elicit testimony from Hardeman "for the purpose of introducing evidence about his drug use on the night of the murder." *Id.* at *3. The state trial court, however, did not

---

BY MR. SPELL:
    I think she's entitled to invoke one or the other, or both, Your Honor. And when I explained her rights to her, she, without much - - without much hesitation, said she would prefer not to testify, but [would rather] invoke whatever rights she needed to invoke. I think both [i.e., both the Fifth Amendment privilege and the Article 505 privilege] are applicable, but one will do it....

(State rec., vol. 1 of 2, trial transcript at p.75).

[10] The trial court based its decision on Charlotte Holts' alleged "spousal privilege." On appeal, it was determined that the trial court "arguably erred" in this regard since the privilege afforded to spouses applies in situations where the State seeks to call the defendant's spouse as a witness, not where the defendant seeks the testimony of his or her spouse. *See State v. Holts*, 99-KA-1677 (La. App. 1st Cir. 2001) (unpublished opinion). However, the state appellate court concluded that such an error was "harmless beyond a reasonable doubt" since it was clear that Mrs. Holts could have, and, if necessary, would have, successfully relied upon her Fifth Amendment privilege to avoid answering petitioner's questions. *Id. See supra* at n.9.

[11] Shortly after Brown's conviction, Hardeman pled guilty to a lesser charge.

6

compel Hardeman's testimony due to her Fifth Amendment privilege against self-incrimination. Brown argued that the state court's action in failing to compel Hardeman's testimony constituted a violation of his Sixth Amendment right to compulsory process.

In determining, on habeas review, the validity of Brown's argument, the Court analyzed whether or not Hardeman was, in fact, entitled to Fifth Amendment protection. Judge Vance noted that such protection is triggered when the risk of self-incrimination is reasonable, "even if the risk is remote...." *Id.* at *14. It is only when the risk of prosecution is "wholly chimerical" that such protection is not afforded. *Id., citing, In re Corrugated Container Antitrust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981). Thus, the issue to be resolved was whether or not Hardeman's risk of self-incrimination was reasonable.

In addressing the above issue, the Court examined Hardeman's posture in the case, observing:

> Hardeman had not pled guilty to anything when she was called to testify, and the first degree murder indictment was still pending against her. Further ... even if Hardeman had pled guilty to a reduced charge, her testimony could have been used against her at sentencing. An impending sentencing may furnish grounds for a legitimate fear of incurring additional criminal liability from testifying.

*Id.* at *15 (quotation and citation omitted).

Next, recognizing that the propriety of a privilege is assessed in light of the anticipated questions, *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980), the Court recounted the type of testimony petitioner had sought to elicit from Hardeman.

> [P]etitioner's counsel gave the following statement of the subject matter of the expected testimony: "Ms. Ann[a] Hardeman was called for the purpose of testifying that on September 7, 1984, she saw John Brown. At the time she saw him, he was intoxicated. It was a short period before the time of this alleged incident. That she had discussions with him about the drugs he had used, that he told her that he had been shooting up on various types of drugs, that she was with him and that she did not see him with a knife on that occasion."

*Brown* at *15.

With the above in mind, Judge Vance concluded that Anna Hardeman's risk of self-incrimination was reasonable, thereby entitling her to Fifth Amendment protection. The Court reasoned:

> The Fifth Amendment extends not only to answers that would themselves support a conviction, but also those that would furnish a link in the chain of evidence needed to prosecute the witness. *See Roznovsky v. Estelle*, 546 F.2d 1185, 1187 (5th Cir.1977).... Here, Hardeman was charged with acting in concert with Brown on the night of the murder. Any testimony linking Hardeman with Brown on that night would have been potentially damaging [i.e., posed a reasonable risk of self-incrimination] to Hardeman.

*Brown* at *16.

Similar to the situation in *Brown*, in this case, when testimony was sought from Charlotte Holts, a charge of simple robbery was still pending against her. The prosecutor specifically recognized that Charlotte Holts was a defendant and that she herself would soon face trial.[12] Further, as shown by the questions actually posed to, but not answered by, Charlotte Holts, the direct examination she faced concerned the events leading to the robbery which she was charged with committing.

---

[12] *See supra* at n.2.

8

> MR. MCGUCKIN (defense counsel):
> Q. Are you familiar with the facts surrounding this particular incident [i.e., the alleged robbery]?...
>
> Q. On the evening this allegedly, this event allegedly occurred, did you tell Mr. Holts that Mr. Booth [the victim] owed you any money?

(State rec., vol. 1 of 2, trial transcript at p. 78).[13]

Based upon the fact that petitioner was seeking testimony from Charlotte Holts linking her with him on the night of the pertinent incident and she was still facing a criminal robbery charge in connection with the incident, along with an impending trial, the risk of incriminating herself as a result of such testimony was clearly reasonable. As such, Charlotte Holts was entitled to Fifth Amendment protection.[14]

---

[13] Petitioner confirms that he sought to have Charlotte Holts testify regarding the actions which precipitated their being charged with simple robbery. Specifically, petitioner states that he would have had Charlotte Holts: 1) Explain why she and petitioner had gone to the victim's home; 2) discuss the circumstances leading up to their encounter with the victim; 3) contradict "key parts" of the victim's testimony; 4) admit that she encouraged petitioner to come with her to secure the victim's payment of a legitimate debt; 5) testify that neither she nor petitioner had any "reason to suspect that events would take an ugly turn at the [victim's] house"; 6) testify that she did not strike the victim; and, 7) testify that neither she nor petitioner took anything from the victim. *See* Federal rec., doc. # 1, petitioner's supporting memorandum at pp. 4-5.

[14] In the alternative, petitioner argues that Charlotte Holts was not entitled to "blanket" Fifth Amendment protection, but rather, was only entitled to protection against particular questions whose answers may have incriminated her. However, as noted above, based upon the questions actually posed to Charlotte Holts, it is clear that petitioner sought testimony about events surrounding the incident at issue. Responses to such questions would have linked Charlotte Holts to petitioner, as well as to the incident itself, an incident concerning which she was scheduled to stand trial. As such, it can reasonably be anticipated that said responses may have been incriminating, thereby warranting Fifth Amendment protection against the entire examination. Accordingly, this Court concludes that "blanket" Fifth Amendment protection was justified. *See Brown* at *16 (where witness "would have been able to invoke the Fifth Amendment in connection with the entire area that petitioner sought to explore at trial," the exclusion of her testimony in its entirety was appropriate); *see also Roznovsky v. Estelle*, 546 F.2d 1185, 1187-88 (5th Cir. 1977) (where it can be "reasonably concluded" that desired

With a determination that a witness, such as Charlotte Holts, had a Fifth Amendment right to refuse to answer a defendant's questions, another issue arises: Does the witness' Fifth Amendment right against self-incrimination overcome the defendant's Sixth Amendment right to compulsory process? The overwhelming majority of courts which have faced this issue have answered it in the affirmative, determining that a witness' right to remain silent overrides a defendant's right to compulsory process. *See United States v. De la Cruz*, 996 F.2d 1307, 1312 (1st Cir. 1993); *United States v. Lumpkin*, 192 F.3d 280, 285-86 (2nd Cir. 1999); *United States v. Hernandez*, 962 F.2d 1152, 1161 (5th Cir. 1992); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1988); *Gleason v. Welborn*, 42 F.3d 1107, 1109 (7th Cir. 1994), *cert. denied*, 514 U.S. 1109, 115 S.Ct. 1961, 131 L.Ed.2d 852 (1995); *United States v. Bowling*, 239 F.3d 973, 976 (8th Cir. 2001); *United States v. Baker*, 10 F.3d 1374, 1414 (9th Cir. 1993), *overruled in part on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Kuku*, 129 F.3d 1435, 1438 (11th Cir. 1997); *United States v. Edmond*, 52 F.3d 1080, 1109 (D.C. Cir. 1995). The only deviation from this general rule has occurred where unusual circumstances existed. *See e.g Liegakos v. Cooke*, 106 F.3d 1381, 1387 (7th Cir. 1997) (where witness was offered assurance from prosecutor that his testimony would not be used against him, said assurances replaced his Fifth Amendment privilege and he could be compelled to testify). No such circumstances exist in the instant matter. Thus, because Charlotte Holt had a Fifth Amendment right not to testify and because

---

questions to witnesses "might result in self-incriminating answers ..., 'blanket' privileges against self-incrimination" are necessary to protect the witnesses' rights).

that right overrode petitioner's Sixth Amendment right to compulsory process, petitioner, by virtue of the trial court's failure to compel Charlotte Holts to testify, suffered no constitutional violation.

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, James Holts, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 3RD day of February, 2003.

LOUIS MOORE, JR.
United States Magistrate Judge